LEXINGTON BANK v. JOHN WIRGES.

FILED NOVEMBER 18, 1897.    No. 7482.

1. **Chattel Mortgages:** FORECLOSURE SALE: WAIVER OF RIGHTS UNDER STATUTE. Section 6, chapter 12, Compiled Statutes, prescribing the mode of conducting a chattel mortgage sale, was designed for the protection of the mortgagor, and he may waive his right thereunder to have the mortgaged property in view at the time of sale, if he chooses to do so.

2. ——: ——: ——. *Held*, The mortgagor waived the benefit of the statute by stipulating in the mortgage for the sale of the property by the mortgagee, "at public or private sale with or without, as the holder may deem best, an advertisement, and sale according to law, being hereby expressly waived."

ERROR from the district court of Dawson county. Tried below before HOLCOMB, J.  *Reversed.*

*C. W. McNamar*, for plaintiff in error.

*H. M. Sinclair* and *N. R. Greenfield, contra.*

NORVAL, J.

The defendant below, the Lexington Bank, is a corporation engaged in the banking business in the city of Lexington, Dawson county, and plaintiff, John Wirges, was one of its customers, having an open account with the bank. At divers times he also borrowed money from the

defendant at a usurious rate of interest, giving his notes for the sums thus obtained. Some of the notes have been paid in full, while others, or some portions thereof, by a series of renewals were finally merged into three notes for $270, $3,300, and $4,000 respectively, which have not been fully paid. To secure the payment of the said note of $4,000 Wirges executed and delivered to the bank a chattel mortgage upon one brick machine and connections and tools; one boiler, engine, and connections; one boiler house; one windmill, tower, tank, and pipes; five frame sheds; two frame houses; 435,000 bricks, burned and unburned; ten head of horses; three wagons; two buggies; five sets of harness, and other personalty. Default having been made in the condition of the mortgage by Wirges, the bank took possession of the mortgaged property, advertised and sold the same, and applied the proceeds upon the indebtedness of the mortgagor. Wirges brought this action against the bank for an accounting, and for damages for the alleged conversion of the mortgaged chattels, the contention being that the bank sold the property without complying with the statutory requirements relating to foreclosing chattel mortgages. There was a trial before a referee, who found, and so reported to the court, that the amount due the bank on the note, together with $73.80 as expenses in taking, keeping, advertising, and selling the chattels, to be the sum of $5,482.55, and that the bank had received as usurious interest on the notes the sum of $1,805.17. The 9th and 10th findings of fact of the referee are as follows:

"9. I find that the defendant made a lawful sale of the mortgaged property, to-wit: 10 horses, 1 buggy, 2 wagons, 3 sets of harness, 1 single harness, for which it received the sum of $439.

"10. I find that the following mortgaged property was not in view at the time and place of sale, and that the same was unlawfully sold, and converted by the defendant: 1 windmill and tank, of the value of $60; 5 sheds, of

the value of $250; 1 stable, of the value of $50; 1 house, of the value of $100; 1 house, of the value of $500; 1 engine house, of the value of $50; 1 lot of tools, etc., of the value of $100; 1 engine and boiler, of the value of $500; 170,000 burned bricks, of the value of $1,190; 200,000 unburned bricks, of the value of $700; loose lumber, $45,—all being of the aggregate value of $3,545."

The referee also found as conclusions of law: First— That defendant should be credited with $5,482.55. Second—That plaintiff should be credited for usurious interest as shown by finding number 4, $1,805.17; for item shown in No. 9, $439; for item shown in No. 10, $3,545,— total, $5,789.17. Third—That plaintiff should have judgment against the defendant for the difference between $5,789.17 and $5,482.55, to-wit, $306.62.

Exceptions were filed by the bank to the referee's report, which were overruled, as was likewise a motion for a new trial, and judgment was rendered against the bank in accordance with the findings of the referee. Counsel for defendant below assail the tenth finding of fact, and the second and third conclusions of law based thereon. It is true, as found by the referee, that the portion of the mortgaged chattels described in the said tenth finding was not in sight at the time of the sale. It is on this fact alone that the charge of conversion is based. If the sale for that reason was not unlawful, defendant should only have been held accountable for the amount actually received for the property, rather than the market value thereof. The important question to which we shall then give attention is whether the sale of the property was illegal. The legislature, by chapter 12, Compiled Statutes, has provided the manner in which chattel mortgages may be foreclosed in this state; how notice of sale shall be given, the requisites of such notice, when and where the sale shall be conducted, and that the same shall be had in view of the property. This last requirement not having been complied with as to the property mentioned in the tenth finding, a strict statutory sale of all the mort-

gaged property has not been had, and the bank should account to the mortgagor for the value of that portion thereof which was disposed of in a manner other than is provided by law, unless the statutory requirements relating to foreclosure cannot be invoked in this case. The legislature has not established, nor attempted to do so, an inflexible rule for the foreclosure of chattel mortgages; but said chapter 12 has merely specified a method of sale by which the equity of redemption of the mortgagor may be extinguished. That the mode therein prescribed is not the only one the mortgagee may pursue is obvious. A verbal chattel mortgage cannot be thus foreclosed, since such a mortgage cannot be recorded as required by section 2 of said chapter 12, which is a prerequisite to a statutory foreclosure. And yet this court has upheld the validity of a verbal chattel mortgage. (*Conchman v. Wright*, 8 Neb., 1; *Sparks v. Wilson*, 22 Neb., 112.) The rights of the mortgagor may be cut off by an action in equity to foreclose the mortgage, and undoubtedly mortgaged chattels may be sold in accordance with the stipulation in the mortgage, although different from the mode laid down in said chapter 12, especially where the rights of third parties are not involved. (*Faeth v. Leary*, 23 Neb., 267; *Chaffee v. Atlas Lumber Co.*, 43 Neb., 225; *Scott v. Davis*, 44 Pac. Rep. [Kan.], 1001; Jones, Chattel Mortgages, sec. 709.)

The statute prescribing the time, place, and manner of sale was designed for the protection of the mortgagor, but he may waive his right thereunder if he sees proper to do so. The right of a mortgagor of chattels to waive the benefit of the statute relating to foreclosure has been recognized by this court. (See *Callen v. Rose*, 47 Neb., 638.) By proper stipulation in the mortgage the mortgagor may dispense with a public auction or with the mortgaged property being in actual view at the time of sale. (*Darnall v. Darlington*, 28 S. Car., 255; *Stevens v. Breen*, 75 Wis., 600; *Welcome v. Mitchell*, 81 Wis., 566; *Rose v. Page*, 46 N. W. Rep. [Mich.], 227; *Harris v. Lynn*, 25 Kan., 281; *Reynolds v. Thomas*, 28 Kan., 810.)

It remains to be determined whether this mortgagor waived a strict statutory foreclosure. It is disclosed that when the mortgage was executed, none of the mortgaged property was situate in the city of Lexington, but the larger portion thereof was at the yards of the mortgagor, some two miles distant from the city. Especially was this true as to the major part of the property described in the tenth finding of the referee. It is likewise noticeable that most of the property therein specified was not movable ordinarily, at least without great loss and damage. And yet the mortgage provided for the sale of the property in Lexington. It is evident that the parties never for a moment contemplated that the unburned bricks, sheds, stable, houses, engine house, and engine and boiler should be removed to Lexington for the purpose of sale, but rather that the statutory right to have this property present at the sale was waived by the mortgagor. This view is emphasized by the fact that the mortgage contained a clause authorizing the mortgagee to sell the property "at public or private sale, at Lexington, Nebraska, with or without an advertisement, and sale according to law being hereby expressly waived." This constituted an effectual waiver of the mortgagor's right, under the statutes, to have the sale made in sight of the property. There has been no conversion by the bank, and the referee and the district court each erred in holding that the mortgage sale was illegal. The judgment is

REVERSED.